25-383-cv

# United States Court of Appeals
# For the Second Circuit

August Term, 2025

(Argued: February 24, 2026     Decided: August 7, 2026)

Docket No. 25-383-cv

_____

DERWIN SALTERS,

*Plaintiff-Appellant*,

v.

NEW YORK CITY TRANSIT AUTHORITY, JEAN L. ANDRE,

*Defendants-Appellees*.[*]

_____

Before:

LOHIER, *Chief Judge*, LYNCH and MENASHI, *Circuit Judges*.

Derwin Salters appeals from the February 18, 2025 judgment entered by the United States District Court for the Eastern District of New York (Orelia E. Merchant, *J.*) dismissing with prejudice his state law tort claims after a jury returned a verdict in favor of the New York City Transit Authority ("NYCTA") and Jean L. Andre, a bus driver employed by the NYCTA. Salters commenced this action to recover for injuries he sustained in a car accident with an NYCTA bus operated by Andre. Salters now seeks a new trial for two reasons. First, he

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

asserts that the District Judge failed to act impartially and thereby deprived him of his right to a fair trial. Second, he contends that the Magistrate Judge charged with jury selection violated his constitutional rights under *Batson v. Kentucky*, 476 U.S. 79 (1986), by denying his *Batson* challenge to opposing counsel's peremptory strikes of three Black prospective jurors without adjudicating the credibility of the race-neutral reasons proffered for the strikes. We reject Salters's generalized objections to the District Court's handling of the trial. With respect to Salters's *Batson* claim, however, we hold that the Magistrate Judge erred in denying the motion without explicitly adjudicating the credibility of the proffered race-neutral explanations for each peremptory strike. We therefore **REMAND** the case to the District Court with instructions to conduct a reconstruction hearing, or, if it is no longer possible to do so effectively, to order a new trial.

Judge Menashi dissents in a separate opinion.

> CANER DEMIRAYAK, Law Office of Caner Demirayak, Esq., PC, Bronx, NY, *for Plaintiff-Appellant*.
>
> THERESA FRAME, MTA Law Department, Brooklyn, NY (Anna J. Ervolina, MTA Law Department, Brooklyn, NY, Rocco Iervasi, Kritzer Law Group, Smithtown, NY, *on the brief*), *for Defendants-Appellees*.

LOHIER, *Chief Judge*:

Derwin Salters appeals from the February 18, 2025 judgment entered by the United States District Court for the Eastern District of New York (Orelia E. Merchant, *J.*) dismissing with prejudice his state law tort claims after a jury returned a verdict in favor of the New York City Transit Authority ("NYCTA") and Jean L. Andre, a bus driver employed by the NYCTA (collectively, "the Defendants"). Salters brought this suit to recover for injuries he sustained in a

2

car accident with a city bus operated by Andre. On appeal we consider Salters's arguments that he was deprived of his right to a fair trial and that the Magistrate Judge responsible for jury selection failed to comply with step three of *Batson v. Kentucky*, 476 U.S. 79 (1986), which requires the trial court to decide "whether the [stated] race-neutral reason for striking a juror is pretextual in light of all evidence with a bearing on it." *Pitchford v. Cain*, 146 S. Ct. 1345, 1349 (2026) (citation modified). We reject Salters's fair-trial challenge but hold that the Magistrate Judge failed to comply with *Batson*. We therefore **REMAND** to the District Court with instructions to conduct a *Batson* reconstruction hearing, or, if it is no longer possible to do so effectively, to order a new trial.

## BACKGROUND

### I

Salters was seriously injured when his car collided with a municipal bus operated by the NYCTA. He filed this diversity action claiming that the NYCTA and the bus driver acted negligently. Both parties requested a jury trial but consented to Magistrate Judge Lara K. Eshkenazi presiding over jury selection only. Three Black potential jurors—Jurors 8, 16, and 17—are at the heart of this case.

3

During *voir dire*, Juror 8, who had previously served on a jury in a criminal case, introduced herself as a "health tech," the mother of two adult children, and married to a security officer. App'x 62. Juror 16, a single mother, worked "as a home attendant" for an "adult care company" and had never been selected for a jury despite appearing once for jury duty. App'x 60. Juror 17 had attended college for graphic design, "liv[ed] off investments in the stock market," consumed his news from social media, and had never served on a jury. App'x 61.

After *voir dire*, defense counsel exercised all of his peremptory strikes against those three prospective jurors. Noting that "the defendant ha[d] chosen to exclude three persons of [B]lack skin color," Salters's counsel immediately raised a *Batson* challenge. App'x 64–65. In response, the Magistrate Judge said that she did not "remember the race of everyone else on the jury." App'x 65. After Salters's counsel listed the struck jurors and repeated that all three were Black, the Magistrate Judge counted the empaneled jurors and observed that two other Black jurors remained on the jury.

The Magistrate Judge then asked defense counsel to provide "race neutral reasons" for the challenged strikes. App'x 66. Defense counsel responded:

4

Honestly I didn't even look at the race to know why I was striking them. I have to go back to my notes. [Juror 8], I believe—I'm trying to picture the person in my head. So from my opinion this case involves medical records and things of that nature. She seemed to be very simply educated, not knowing if she would fully be able to comprehend all the expert testimony.

App'x 66. Responding "[o]kay," the Magistrate Judge asked defense counsel to supply race-neutral reasons for striking Jurors 16 and 17. App'x 66. Defense counsel added:

[Juror 16], I believe she is a home health aide. So sympathy toward dealing with individuals who may be disabled, elderly, things of that nature. . . . [Juror 17], he, in my opinion, he just seemed a little out of it, not being able to comprehend all the evidence that was going to come in. He said he's very philosophical. I forgot where he said he gets his news from, but he didn't seem like he would fully comprehend the evidence. Nothing whatsoever to do with race.

App'x 66–67.

Salters's counsel promptly renewed his *Batson* objection, arguing that defense counsel's reasons for striking the three Black jurors were pretextual. When Salters's counsel characterized opposing counsel's rationale for striking Juror 16[1] as "that she's a simple-minded person," the Magistrate Judge

---

[1] While the record reflects that Salters's counsel referred to Juror 16 by name, App'x 67, it is possible that he intended to refer to Juror 8, whom defense counsel had previously described as "seem[ing] to be very simply educated," App'x 66. In any event, that ambiguity does not affect our analysis of Salters's *Batson* claim.

5

interjected, "I don't think he used those words. Let's not characterize it. He didn't say she's a simple-minded person. That's not what he said." App'x 67.

Salters's counsel continued:

> And for [Juror 17,] [opposing counsel's rationale was] that he's out of it. Are people of [B]lack skin color simpl[y] educated and out of it? I mean, come on. These are not valid reasons. And you know, we had a jury pool of a jury that would more fairly represent the parties in this case.
>
> The [D]efendant bus driver is also [B]lack, same color. We have a jury that's mostly not [B]lack. This is a complete jury that violates the *Batson* rule, and the challenges on the three that the [D]efendant raised need to be reinstated and need to be put on the jury. Just because you're [B]lack doesn't mean you don't get to be on a jury. This is 2025.

App'x 67–68. The Magistrate Judge then denied Salters's *Batson* motion, finding that defense counsel's proffered reasons for excluding the three Black jurors were race-neutral:

> I don't think he struck him because he's [B]lack. He did articulate race neutral reasons. I do think there are still—there are two [B]lack members who will still be on the jury. I'm going to overrule the *Batson* challenge. Obviously you have it preserved. Anything else?

App'x 68. Salters's counsel persisted that the "jury [was] overwhelmingly not [B]lack and . . . designed by the [D]efendant on purpose"; defense counsel protested that counsel's description was both "disrespectful" and "harsh"; and

6

the Magistrate Judge ended the colloquy with, "Okay. I think everyone has made their record on this" *Batson* objection. App'x 68.

After an eight-day trial before District Judge Merchant, which Salters now claims was marred by Judge Merchant's excessive interference with his attorney's examination of witnesses and abandonment of "the appearance of impartiality and detachment," *United States v. Mazzilli*, 848 F.2d 384, 388 (2d Cir. 1988), the jury returned a verdict in favor of the Defendants.

## DISCUSSION

### I

We start with Salters's contention that the District Court deprived him of his right to a fair trial by sustaining opposing counsel's objections and interfering with his attorney's examination of witnesses. Salters says that the District Court's constant evidentiary rulings against him left an "indelible impression" on the jury. Appellant's Br. 48 (quoting *Mazzilli*, 848 F.2d at 388). We can easily dispense with his argument.

Although "a court must strive for that atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding," *Manganiello v. City of New York*, 612 F.3d 149, 169 (2d Cir. 2010) (citation modified), "a trial judge need

7

not sit like a bump on a log throughout the trial," *Mazzilli*, 848 F.2d at 388

(citation modified). To the contrary, the district judge is charged with the "active

*responsibility* to [e]nsure that issues are clearly presented to the jury," which

sometimes entails intervening to "clarify[] ambiguities, correct[] misstatements,

or obtain[] information needed to make rulings." *United States v. Pisani*, 773 F.2d

397, 403 (2d Cir. 1985) (emphasis added). A jury's factual findings will stand

unless "the judge's behavior was so prejudicial that it denied a party a fair, as

opposed to a perfect, trial." *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 98 (2d

Cir. 1998) (citation modified).

The trial record is clear. Judge Merchant excluded inadmissible, repetitive,

and narrative testimony without injecting her own view of the evidence.

*Contrast United States v. Victoria*, 837 F.2d 50, 55 (2d Cir. 1988) (granting a new

trial where the judge interrupted to "convey to the jury . . . the judge's opinion

that the witness was not worthy of belief"), *with Pisani*, 773 F.2d at 403 (declining

to grant a new trial based on "interruptions [that] were invited by defense

counsel's often ambiguous or repetitive questions"). So far as we can tell, Judge

Merchant did nothing that "exceeded any proper bounds or conveyed to the jury

any impression of the judge's belief" in the probable outcome. *Pisani*, 773 F.2d at

403.  And contrary to what Salters tells us, "a simple numerical tally of [objections] sustained and overruled . . . is not enough to establish that the scales of justice were tipped against a [party]."  *Id.* at 402.  In light of the entire trial record, "we are convinced beyond peradventure of doubt that [the District Judge's] conduct was not prejudicial" to Salters and that Salters's "trial was fair."  *United States v. Bejasa*, 904 F.2d 137, 141 (2d Cir. 1990).

## II

We turn to the more vigorous challenge arising from Magistrate Judge Eshkenazi's rejection of Salters's *Batson* challenge during jury selection.  The question is whether the Magistrate Judge complied with *Batson*'s third step by explicitly determining whether defense counsel's proffered race-neutral reasons for striking three Black jurors were credible or pretextual.

## A

A district court must apply a three-part test to assess whether a party exercised a peremptory challenge in a racially discriminatory manner in violation of *Batson*:  "[O]nce a *prima facie* showing of purposeful discrimination has been made, the burden shifts to [the non-movant] to proffer a race-neutral explanation for the strike, at which point the court must determine whether the [moving

9

party] has established purposeful discrimination."  *Dolphy v. Mantello*, 552 F.3d 236, 238–39 (2d Cir. 2009) (citing *Batson,* 476 U.S. at 96–98).  The dispute on appeal concerns *Batson*'s third step, which "requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances."  *Jordan v. Lefevre,* 206 F.3d 196, 200 (2d Cir. 2000) (citation modified).  "Only at the third step of the analysis does the persuasiveness of the non-movant's race-neutral explanation become relevant."  *Barnes v. Anderson*, 202 F.3d 150, 156 (2d Cir. 1999).  Whether that explanation "should be believed" is "the decisive question" in the *Batson* analysis.  *Jordan*, 206 F.3d at 201 (quoting *Hernandez v. New York*, 500 U.S. 352, 365 (1991)).

To sum up, a bedrock rule is that "it is error to deny a *Batson* motion without determining whether the [non-movant's] race-neutral explanations for the challenged peremptory strikes are credible."  *United States v. Thomas*, 320 F.3d 315, 320 (2d Cir. 2003); *see United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir. 1991).  To be sure, the rule has some flexibility; it permits a trial court to satisfy its obligation at step three without "intricate factual findings."  *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006).  But a "conclusory statement that the . . . explanations were race neutral," without an additional finding that the

10

explanations were in fact the actual reasons for the challenged strikes, is not enough to satisfy step three. *Jordan*, 206 F.3d at 200.

B

In rejecting Salters's challenge, the Magistrate Judge's findings, such as they were, fell short. As soon as Salters's counsel objected to defense counsel's exercise of all three peremptory strikes against Black jurors, the Magistrate Judge counted the number of Black jurors remaining on the jury before asking defense counsel to justify each strike on race-neutral grounds. Defense counsel initially justified his strike of Juror 8—the "health tech" who had "trained as a medical assistant," App'x 62—by noting that "this case involves medical records" and "[Juror 8] seemed to be very simply educated, [and may not] fully be able to comprehend all the expert testimony," App'x 66. Defense counsel then proffered that Juror 16's job as "a home health aide" suggested that she would be "sympath[etic] toward . . . [the] disabled." App'x 66–67. And Juror 17, defense counsel said, "just seemed a little out of it." App'x 67.

When Salters countered that none of the explanations were credible, the Magistrate Judge replied only with respect to Juror 17: "I don't think [defense counsel] struck *him* because *he's* [B]lack. He did articulate race neutral reasons."

11

App'x 68 (emphasis added).  The Magistrate Judge then overruled the *Batson*

challenge without first determining that defense counsel's proffered reasons for

striking Jurors 8 and 16 were the actual reasons rather than pretextual.  App'x 68.

The Magistrate Judge's failure to resolve the credibility issue at step three

is a fatal error.  "[T]he *Batson* analysis recognizes that a race neutral reason may

be rational and yet be a pretext for discrimination," *Jordan*, 206 F.3d at 200, and

that therefore "[t]he *credibility* of an attorney offering a race-neutral explanation

is at *the very heart* of that analysis," *Barnes*, 202 F.3d at 157 (emphasis added).

"We cannot square the" Magistrate Judge's failure to determine the credibility of

the attorney's explanation "with the court's duty under the third step of *Batson*."

*Id.*  To be sure, we have not required (and do not now require) "a talismanic

recitation of specific words in order to satisfy *Batson*."  *Galarza v. Keane*, 252 F.3d

630, 640 n.10 (2d Cir. 2001).  "An unambiguous rejection of a *Batson* challenge

will demonstrate with sufficient clarity that a trial court deems the movant to

have failed to carry his burden to show that the [non-movant's] proffered race-

neutral explanation is pretextual."  *Dolphy*, 552 F.3d at 239 (citation modified).

But an unambiguous rejection of the challenge at a minimum means that the trial

court has made an "explicit adjudication of the credibility of the non-movant's

12

race-neutral explanations" as to "*each* challenged strike." *Barnes*, 202 F.3d at 156 (emphasis added).

In *Galarza*, for example, we held that a trial "court failed to adjudicate the credibility of the race-neutral explanations offered by the [non-movant] for *each* of the challenged prospective jurors." 252 F.3d at 640 (emphasis in original). In other words, as we explained in *Dolphy*, at step three "a trial court must somehow make clear whether it credits the non-moving party's race-neutral explanation for striking the relevant panelist." 552 F.3d at 239 (citation modified). As cases illustrate, "[e]xplicitness" by way of a "clear, individualized rejection" is "required to support the 'great deference' we accord 'the trial judge's determination of discriminatory intent and credibility.'" *Messiah*, 435 F.3d at 202–03 (Jacobs, *J.*, concurring) (quoting *Jordan*, 206 F.3d at 200).

The Defendants initially respond that the Magistrate Judge fulfilled her obligation at step three by attempting to develop the record and thereafter asserting, "I don't think [defense counsel] struck *him* because *he's* [B]lack," followed by, "I'm going to overrule the *Batson* challenge." App'x 68 (emphasis added). But the Defendants do not dispute that "him" referred only to Juror 17, not Jurors 8 and 16. *See Barnes*, 202 F.3d at 156. And the record does not reflect

13

any "clear credibility finding" as to the veracity of defense counsel's reasons for striking Jurors 8 and 16. *Dolphy*, 552 F.3d at 238. Absent any indication that "the trial court credited the[se race-neutral] explanation[s]," *id.* at 239, the Magistrate Judge's decision to overrule Salters's *Batson* challenge is not a sufficiently "[c]lear acceptance" to satisfy step three, *Messiah*, 435 F.3d at 199.

Taking a different tack, the Defendants suggest that the Magistrate Judge *did* credit defense counsel's explanations for all three strikes when she observed that counsel had "waive[d] . . . opportunities to strike other [B]lack jurors" and opted to keep two Black jurors on the empaneled jury. *Thomas*, 320 F.3d at 319. We disagree that the inclusion of two Black jurors on the jury is a valid reason to excuse the peremptory strikes if defense counsel's stated reasons for those strikes are pretextual. *See id.* at 319–20. In any event, the Magistrate Judge's reliance on the presence of the two Black jurors on the empaneled jury was entirely misplaced. Defense counsel had already exhausted his available peremptory strikes with his third strike (of Juror 16), so the Magistrate Judge could not know whether counsel would have struck the two remaining Black jurors.[2]

---

[2] The dissent claims that the Magistrate Judge referenced the racial composition of the empaneled jurors only in response to Salters's counsel's objection that the jury was "mostly not Black." Menashi, *J.*, Dissenting Op., *post* at 13 (citation modified). That is not a reasonable reading of the record. From the moment Salters's counsel raised a

For the foregoing reasons, we agree with Salters that the Magistrate Judge failed to make the required credibility determination under *Batson*'s third step.

C

Relying heavily on our decision in *Messiah*, 435 F.3d at 198, the dissent insists that the Magistrate Judge must have satisfied step three when it rejected the *Batson* challenge in general, Menashi, *J.*, Dissenting Op., *post* at 1–2. As we did in *Messiah*, we recognize that an "unambiguous rejection" can at times satisfy *Batson*'s third step. 435 F.3d at 198. But *Messiah* did not further define an "unambiguous rejection" or purport to overrule our earlier decisions specifying that the trial court should at least "make clear whether [it] credits the non-moving party's race-neutral explanation for striking the relevant panelist." *Id.*

Our decisions preceding *Messiah* are instructive on what the third *Batson* step requires. In *Barnes*, we remanded to the trial court to redo its *Batson* analysis because it was "not clear" whether the court had "found that [the non-movants'] explanation was credible" or "that [the non-movants'] explanation merely sufficed to satisfy their second-step burden of articulating a non-racial explanation." 202

*Batson* objection, the Magistrate Judge focused on the race of "everyone else on the jury" and began to count the remaining Black jurors even before Salters's counsel argued that the jury was "mostly not [B]lack." App'x 65–67.

15

F.3d at 157.  Likewise, in *Jordan*, which also preceded *Messiah*, we held that a

"conclusory statement that the [non-movant's] explanations were race neutral did

not satisfy *Batson*'s third step."  206 F.3d at 200.  Both *Barnes* and *Jordan* made plain

that a trial court violates its obligation to make a credibility finding when it rejects

the movant's *Batson* challenge merely because the non-movant articulated a non-

racial explanation for its jury strikes.[3]  *Batson* itself spells out the nature and source

of that obligation at step three:  "[T]he trial judge's findings," the Court

announced, "will turn on evaluation of credibility" of the proffered race-neutral

reasons for a strike.  *Batson*, 476 U.S. at 98 n.21.  Accepting "general assertions" of

neutrality at step three, without more, the Court explained, would render "the

Equal Protection Clause . . . but a vain and illusory requirement."  *Id.* at 98

(citation modified).

---

[3] According to the dissent, *Jordan* was about a trial judge's failure to afford the parties "a reasonable opportunity to make their respective records," while *Barnes* concerned a trial judge whose rejection of a *Batson* challenge was not "unambiguous."  Menashi, J., Dissenting Op., *post* at 8–10 (quoting *Messiah*, 435 F.3d at 198).  Neither of these descriptions holds up on a fair and careful reading; in fact, the dissent distorts the actual reasoning in these cases.  In saying that *Jordan* applies only to cases in which a trial judge "short-circuit[ed]" the *Batson* process, Menashi, J., Dissenting Op., *post* at 7, for example, the dissent omits that the *very reason* the trial court erred in that case was because, as here, it never "explicitly adjudicat[ed] the . . . race neutral explanations" and instead ruled "in a summary fashion."  *Jordan*, 206 F.3d at 200.  As for *Barnes*, the dissent disregards that the trial judge's rejection of the *Batson* challenge may have been ambiguous precisely because the judge made no "explicit [credibility] adjudication." *Barnes*, 202 F.3d at 156.

16

Decisions postdating *Messiah* confirm our view of the trial court's obligations at step three. *Dolphy* reminded us that *Batson*'s third step requires an explicit judicial evaluation of the credibility of the proffered neutral explanation for a strike. 552 F.3d at 239. A "conclusory statement" that accepts the race-neutral explanations as "decisive and sufficient," we asserted, "does not necessarily indicate—even by inference," and even when accompanied by a ruling that "the strike stands"—"that the trial court credited [counsel's race-neutral] explanation" at *Batson*'s third step. *Id.* (citation modified). *Dolphy*'s formulation of the third step reflects the logic and language of *Batson* and its progeny, which "virtually compels the conclusion that the trial court has an independent obligation to 'eliminate the taint of racial discrimination' in the jury selection process" with an explicit determination of credibility at step three. *Carew v. Morton*, 150 F.4th 150, 171 (2d Cir. 2025) (Lohier, *J.*, concurring) (quoting *Powers v. Ohio*, 499 U.S. 400, 402 (1991)).

Finally, the Supreme Court's recent decision in *Pitchford v. Cain*, 146 S. Ct. 1345 (2026), supports our conclusion. In *Pitchford*, the Court determined in the context of a capital habeas petition that a state trial court had failed to conduct

17

"the essential third step of the *Batson* inquiry." *Id.* at 1349. The Court helpfully restated the well-established requirements of step three as follows:

> After [the non-movant] asserts race-neutral reasons for a peremptory strike, the defense counsel must at least have an opportunity to argue that the asserted race-neutral reasons were not the actual reasons—that is, the reasons were pretextual. Then, the trial court can determine whether those asserted reasons were the actual reasons or instead were pretextual.

*Id.* at 1353. Step three thus requires a *separate* "determin[ation that the] asserted reasons were the actual reasons" and not "pretextual." *Id.*

For whatever reason in Salters's case, however, "things broke down, and the ordinary trial-court procedure for resolving *Batson* claims at step three never occurred." *Id.* Without an explicit judicial determination that defense counsel's stated reasons for striking Jurors 8 and 16 "were the actual reasons or instead were pretextual," *id.*, we are unable to tell whether the trial court has fully discharged its constitutional responsibilities under *Batson*.

D

Salters argues that the Magistrate Judge's error requires not only vacatur but an entirely new trial. We decline to go that far. Where a district court has failed to make the findings required at *Batson*'s third step, "the appropriate course usually will be to remand for" the district court to conduct a

18

reconstruction hearing after which it can make "findings . . . as to the challenged strikes and an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Barnes*, 202 F.3d at 156 (citation modified). In its discretion, the district court may otherwise decide that "the passage of time has made such a determination impossible or unsatisfactory" and that a new trial is warranted. *Dolphy*, 552 F.3d at 240.

We therefore remand to the District Court to make the credibility determination under *Batson* after a reconstruction hearing, or to order a new trial if it determines that the passage of time or some other impediment renders it "impossible or unsatisfactory" to decide credibility at this time. *Id.*

## CONCLUSION

For the foregoing reasons, we **REMAND** the case to the District Court with instructions to conduct a reconstruction hearing, or, if it is no longer possible to do so effectively, to order a new trial.

MENASHI, *Circuit Judge*, dissenting:

When a litigant believes that the opposing counsel struck a juror for an impermissible discriminatory reason, the three-step *Batson* framework follows. First, the litigant must establish "a prima facie case" that the "facts and any other relevant circumstances raise an inference" that the opposing counsel struck the juror "on account of" a protected characteristic. *Batson v. Kentucky*, 476 U.S. 79, 96 (1986). Second, "[o]nce the [litigant] makes a prima facie showing, the burden shifts to the [opposing counsel] to come forward with a neutral explanation for challenging [the] juror[]." *Id.* at 97. Third, the litigant "has an opportunity to rebut the [opposing counsel's] race-neutral reason as pretextual, and the trial court in turn decides whether the [stated] race-neutral reason for striking a juror is pretextual 'in light of all evidence with a bearing on it.'" *Pitchford v. Cain*, 146 S. Ct. 1345, 1349 (2026) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005)).

This appeal focuses on what the trial judge must do at step three. The trial judge must "determine whether [the] asserted reasons" for striking the juror "were the actual reasons or instead were pretextual." *Id.* at 1353. But how does the judge discharge that obligation?

Our court has provided an answer: "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006). The trial judge must allow the parties to offer their objections and responses, and then the trial judge must clearly reject or accept the *Batson* challenge. The trial judge "need not recite a

particular formula of words, or mantra," but must provide only "[a]n 'unambiguous rejection of a *Batson* challenge.'" *Dolphy v. Mantello*, 552 F.3d 236, 239 (2d Cir. 2009) (quoting *Messiah*, 435 F.3d at 198). In this case, the magistrate judge did everything that our precedents require, so I would affirm the judgment of the district court. Because the majority declines to do so, I dissent.

## I

Salters's attorney challenged the defense counsel's use of three peremptory strikes against African American jurors. The defense counsel responded by offering race-neutral explanations. He said that he struck Juror 8 because "this case involves medical records" and Juror 8 "seemed to be very simply educated [and may not] fully be able to comprehend all the expert testimony." App'x 66. He struck Juror 16 because her job as "a home health aide" suggested that she might have "sympathy toward dealing with individuals who may be disabled." *Id.* at 66-67. And he struck Juror 17 because that juror "seemed a little out of it" and "didn't seem like he would fully comprehend the evidence." *Id.* at 67.

The magistrate judge allowed Salters's attorney to argue in response that "[t]hose explanations are a pretext for racial bias" and "are not valid reasons." *Id.* After Salters's attorney argued that the race-neutral reasons were pretextual, the magistrate judge rejected Salters's *Batson* challenge by stating: "I don't think he struck him because he's black. He did articulate race neutral reasons. I do think there are still—there are two black members who will still be on the jury. I'm going to overrule the *Batson* challenge." *Id.* at 68.

The magistrate judge complied with our precedents. "We have repeatedly emphasized that a trial court may not deny a *Batson* motion without determining whether it credits the race-neutral

2

explanations for the challenged peremptory strikes." *Galarza v. Keane*, 252 F.3d 630, 636 (2d Cir. 2001). But to make that determination, the trial court "need not recite a particular formula of words," *Dolphy*, 552 F.3d at 239, or engage in a "talismanic recitation of specific words in order to satisfy *Batson*," *Galarza*, 252 F.3d at 640 n.10. The trial court must provide only "[a]n 'unambiguous rejection of a *Batson* challenge'" because such a rejection "will demonstrate with sufficient clarity that a trial court deems the movant to have failed to carry his burden to show that the [opposing counsel's] proffered race-neutral explanation is pretextual." *Dolphy*, 552 F.3d at 239 (quoting *Messiah*, 435 F.3d at 198).

In other words, "[w]hile there must be an 'explicit adjudication of the credibility of the non-movant's race-neutral explanations,'" *United States v. Altareb*, 758 F. App'x 116, 119-20 (2d Cir. 2018) (quoting *Barnes v. Anderson*, 202 F.3d 150, 156 (2d Cir. 1999)), "'no clearly established federal law requires' the district court 'to provide express reasons for each credibility determination,'" *id.* at 120 (alteration omitted) (quoting *McKinney v. Artuz*, 326 F.3d 87, 100 (2d Cir. 2003)). "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Messiah*, 435 F.3d at 198.[1]

---

[1] *See also Messiah*, 435 F.3d at 203 (Jacobs, J., concurring) ("I agree with the majority that explicitness requires no more than that the trial judge 'make clear whether he credits the non-moving party's race-neutral explanation for striking the relevant panelist,' for example through 'unambiguous rejection of a *Batson* challenge,' and that no 'talismanic recitation of specific words' is needed.") (quoting *Galarza*, 252 F.3d at 640 n.10).

That is what happened here. The parties completed the three *Batson* steps, and the magistrate judge expressly stated that she was "going to overrule the *Batson* challenge." App'x 68. That was a "clear rejection" of the challenge. *Messiah*, 435 F.3d at 198.

## II

The majority decides that the record reflects a "failure" of the magistrate judge "to resolve the credibility issue at step three." *Ante* at 12. The majority offers two points in support of that conclusion.

First, the majority argues that "[w]hen Salters countered that none of the explanations were credible, the Magistrate Judge replied only with respect to Juror 17." *Id.* According to the majority, the statement of the magistrate judge that "I don't think he struck him because he's black," App'x 68, was not a credibility determination sufficient to justify all three strikes. As a result, the majority believes that the magistrate judge "overruled the *Batson* challenge without first determining that defense counsel's proffered reasons for striking Jurors 8 and 16 were the actual reasons rather than pretextual." *Ante* at 12. In other words, the magistrate judge evaluated the reason for striking Juror 17, but she purportedly ignored Juror 8 and Juror 16. Second, the majority appears to argue that the magistrate judge rejected the *Batson* challenge—here, presumably with respect to all three jurors—because of "the presence of the two Black jurors on the empaneled jury." *Id.* at 15. Both points are belied by the record.

### A

First, the magistrate judge did not need "to provide express reasons for each credibility determination." *McKinney*, 326 F.3d at 100. She needed to provide an unequivocal rejection of the *Batson* challenge to the three strikes. And she did exactly that. The magistrate judge clearly rejected the challenge after hearing a lengthy argument

4

from Salters's attorney that the proffered reasons for all *three* jurors were pretextual. *See* App'x 67 ("If I could respond. Those explanations are a pretext for racial bias."); *id.* ("The description of the analysis as to why it was okay to remove [Juror 8] is that she's a simple-minded person."); *id.* ("And for [Juror 17] that he's out of it. Are people of black skin color simple educated and out of it? I mean, come on. These are not valid reasons."). Salters's attorney emphasized that he was challenging all *three* struck jurors. He argued that "[t]his is a complete jury that violates the *Batson* rule, and the [peremptory] challenges on the *three* that the defendant raised need to be reinstated and need to be put on the jury." *Id.* at 67-68 (emphasis added).

After hearing these arguments, the magistrate judge reacted to the attorney's specific argument about Juror 17 by stating that "I don't think he struck him because he's black." *Id.* at 68. The magistrate judge then responded to the attorney's more general argument about the three struck jurors: "He did articulate race neutral reasons. I do think there are still—there are two black members who will still be on the jury. I'm going to overrule the *Batson* challenge." *Id.*

The magistrate judge said that the defense counsel had articulated race-neutral "reasons" in the plural, making clear that she credited the proffered *reasons* for the *three* jurors—not only the one reason given for striking Juror 17. *Id.* That is especially clear in context because the statement of the magistrate judge followed the argument of Salters's attorney regarding the "challenges on the *three*." *Id.* at 67 (emphasis added).

The majority offers two somewhat contradictory critiques of the magistrate judge's decision. On the one hand, the majority claims that the magistrate judge focused too specifically on Juror 17 and

5

overlooked Jurors 8 and 16.[2] On the other hand, the majority claims that the magistrate judge erred "when [she] rejected the *Batson* challenge *in general*," *ante* at 15 (emphasis added), instead of offering "an explicit determination of credibility" for each explanation for each strike, *id.* at 18. The first claim is about the record. The second claim is about our precedent: the majority insists that even if the record is best understood to reflect a rejection of the *Batson* challenge as to all three strikes, our precedents require the magistrate judge to do more than she did to effectuate that rejection.

Both claims are wrong. The record shows that the magistrate judge invited and heard argument with respect to all three strikes, and she rejected the *Batson* challenge as to all three. There is no reasonable way to read the record without concluding that the magistrate judge decided that the defense counsel's "asserted reasons were the actual reasons" rather than "pretextual." *Pitchford*, 146 S. Ct. at 1353. If our precedents require only "a clear rejection or acceptance of a *Batson* challenge" after hearing arguments from the parties, *Messiah*, 435 F.3d at 198, then the magistrate judge satisfied that requirement.

The majority, however, claims that our precedents require more. The majority argues that cases such as *Barnes* and *Jordan* establish that a judge must provide an on-the-record explanation for why each proffered explanation is credible. The cases do not say that.

---

[2] *See ante* at 18-19 ("Without an explicit judicial determination that defense counsel's stated reasons for striking Jurors 8 and 16 were the actual reasons or instead were pretextual, we are unable to tell whether the trial court has fully discharged its constitutional responsibilities under *Batson*.") (internal quotation marks and citation omitted).

In *Jordan*, a defense attorney raised a *Batson* challenge. But "before [the] defense counsel could make any argument to support a *prima facie* showing of discrimination, the trial judge stated, 'in order to save us an awful lot of time, while I don't think it's necessary or required at the present time, I would ask the prosecutor to give me, if you have it, a non-racial basis for exercising the challenges.'" *Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000) (alteration omitted). "The prosecutor provided race neutral reasons for the three strikes," and "[t]he trial judge then ruled 'to the extent there is any application on the *Batson*, I'm denying it. It seems to me there is some rational basis for the exercise of the challenge.'" *Id.* "Later in the *voir dire* defense counsel for Jordan's co-defendant attempted to make a statement regarding the *Batson* challenge." *Id.* But "[t]he trial judge told him 'you've already made your record.'" *Id.* (alteration omitted). And "[w]hen counsel objected that 'the record is not complete' the judge replied 'do it very succinctly, because I'm not going to be spending more time in here listening to you.'" *Id.*

Our court disapproved of the trial judge's treatment of the issue because he "was not in a position to make the requisite determination as to discriminatory intent. In an effort to save 'an awful lot of time' he ruled summarily on the *Batson* application after an extremely brief colloquy, and resisted counsel's efforts to make arguments regarding the peremptory strikes so as to create a full record." *Id.* at 201. In other words, "[t]he trial judge could not properly decide the third *Batson* step because he granted counsel no time to identify the relevant facts and assess the circumstances necessary to decide whether the race neutral reasons given were credible and nonpretextual." *Id.*

The problem in *Jordan* was *not* that the trial judge failed to articulate a detailed explanation of his rejection of the *Batson* challenge. Rather, the problem was the short-circuiting of the process. We

7

emphasized this point: "The letter of *Batson* requires the trial court to consider all relevant circumstances surrounding a defendant's *prima facie* showing of discrimination. It imposes a duty on the trial court to make a determination whether the defendant established intentional discrimination." *Id.* (citation omitted). But far from considering "all relevant circumstances," the trial judge denied the defense counsel the opportunity to identify those circumstances. The trial judge "engaged in a perfunctory exercise designed to speed the proceedings along. Without hearing any argument from defense counsel, the judge declared it was not then necessary that the prosecutor provide a race neutral basis for his challenges, but asked him to provide one in order to save time." *Id.* The flouting of the three-step process did "not constitute a meaningful inquiry into the question of discrimination." *Id.*

Nothing in *Jordan* contradicts the rule articulated in *Messiah*: "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Messiah*, 435 F.3d at 198. The problem in *Jordan* was that the trial judge did not "afford[] the parties a reasonable opportunity to make their respective records." *Id.*

In *Barnes*, the plaintiffs "made their initial *Batson* motion after defendants exercised their first two peremptory strikes to exclude African-American jurors. In response, defendants explained that they struck the first juror because she was suing her landlord in Housing Court and the second 'based on her knowledge as a medical assistant.'" *Barnes*, 202 F.3d at 156. Then, "[a]fter some confusion and the counter-assertion of a *Batson* motion by defendants, the court denied plaintiffs' motion, saying: 'You [defendants' counsel] stated in

summary a sufficient reason. I don't find it pretextual.'" *Id.* (second alteration in original).

Our court expressly concluded that the trial judge's handling of this *Batson* challenge to the first two peremptory strikes was proper—even though all the trial judge said on the record was "You … stated in summary a sufficient reason. I don't find it pretextual." We nevertheless held that "[i]f this was the extent of the *Batson* issue, then the only question before us would be whether the district court erred in finding defendants' explanation credible, a finding entitled to 'great deference.'" *Id.* (quoting *Batson*, 476 U.S. at 98 n.21). In other words, our court saw no problem with the trial judge's conclusory but unambiguous rejection of the *Batson* challenge. The only question that such a record would present on appeal is whether the trial judge erred on the merits of his ruling—not whether the trial judge committed a procedural error by failing to provide a detailed explanation of his credibility determination.

However, our court proceeded in *Barnes* to consider how the trial judge handled the *Batson* challenge to the third strike:

> [A]fter the district court rejected plaintiffs' first *Batson* motion, defendants exercised their third peremptory strike to exclude another African-American juror, and plaintiffs made a second *Batson* motion. Defendants again responded with a race-neutral explanation: the stricken juror had "testified that her son was involved with an encounter, incident with police officers on more than one occasion. She did say she could be fair, but it is our feeling that as a mother's instinct, she would have to have some animus or something."

*Id.* at 156-57. Our court observed that "[a] great deal of confusion followed." *Id.* at 157. The trial judge stated "at one point 'I find that

9

the reason given is sufficient to take it out of the realm of race.'" *Id.* But our court concluded that "it is not clear … whether the district court thus found that defendants' explanation was credible and, therefore, that plaintiffs had failed to carry their ultimate burden of proof or, instead, that defendants' explanation merely sufficed to satisfy their second-step burden of articulating a non-racial explanation." *Id.* Indeed, "[t]he matter grew murkier still when the district court followed this comment by again raising the question of whether plaintiffs' own strikes violated *Batson*." *Id.* After that, "the [trial] court purported to resolve the question of whether either party had violated the *Batson* principle: 'I won't rule on credibility of attorneys right now myself, but I find both cases have sufficient reason. I am not stating whether or not I buy all of your arguments.'" *Id.*

Our court said that "[w]e cannot square the district court's explicit refusal to rule on the credibility of either attorney's explanation with the court's duty under the third step of *Batson*. The credibility of an attorney offering a race-neutral explanation is at the very heart of that analysis." *Id.* So the problem in *Barnes* was that the trial judge did not offer an unambiguous rejection of the *Batson* challenge. It was "not clear" whether the trial judge had proceeded from the second step to the third step, and his express statement that he would not "rule on credibility of attorneys right now" indicated that he had not arrived at a firm rejection of the *Batson* challenge. *Id.* If he had addressed the second *Batson* challenge the same way he had addressed the first one—by stating simply that the defense counsel "stated in summary a sufficient reason. I don't find it pretextual," *id.* at 156—we would have identified no error.

The majority suggests that it is a mistake to be "[r]elying heavily on our decision in *Messiah*" because *Messiah* did not "purport

10

to overrule our earlier decisions." *Ante* at 15. But nothing in those earlier decisions is inconsistent with the *Messiah* rule. We identified errors in *Jordan* and *Barnes* because (1) the parties were denied the opportunity to proceed through the three-step *Batson* process and (2) the trial judge did not provide an unambiguous rejection of a *Batson* challenge. The errors in *Jordan* and *Barnes* were violations of the *Messiah* rule. I agree with the majority that *Messiah* did not "purport to overrule" *Jordan* and *Barnes*. *Id.* But unlike the majority, I see no inconsistency between any of these cases. Instead, the *Messiah* rule distilled the requirements of the preceding case law: "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Messiah*, 435 F.3d at 198.

Our "[d]ecisions postdating *Messiah*" are similarly consistent with the *Messiah* rule. *Ante* at 17. The majority relies on *Dolphy*, but that case reiterated the same principle. In *Dolphy*, after a prosecutor offered race-neutral reasons but *before* the defense counsel could argue that the strike was pretextual, the trial judge responded: "Very well. Strike will stand." *Dolphy*, 552 F.3d at 237. After the defense counsel was permitted to respond to the prosecutor's rationale, the trial court said: "I'm satisfied that is a race neutral explanation, so the strike stands." *Id.*

Before assessing the facts of the case, our court identified the relevant legal standard as the *Messiah* rule, quoting *Messiah* alongside *Barnes* and *Jordan*. *See id.* at 239 ("An 'unambiguous rejection of a *Batson* challenge will demonstrate with sufficient clarity that a trial court deems the movant to have failed to carry his burden to show that the prosecutor's proffered race-neutral explanation is pretextual.'") (quoting *Messiah*, 435 F.3d at 198). Applying that

11

standard, our court decided that "the judge's words seemed to assume that a race-neutral explanation (*Batson* step two) was decisive and sufficient." *Id.* We said that "[a]s in *Jordan*, such a conclusory statement does not necessarily indicate—even by inference—that the trial court credited the prosecution's explanation, especially since (i) the judge's words suggested that the proffer of a race-neutral explanation was itself enough, and (ii) the explanation given here lends itself to pretext." *Id. Dolphy* was another case in which the trial judge did not comply with the *Messiah* rule by providing an unambiguous rejection of the *Batson* challenge after hearing the parties' arguments at step three.[3]

**B**

Second, there is no reason to conclude from this record that the magistrate judge believed that "two Black jurors on the jury is a valid reason to excuse the peremptory strikes if defense counsel's stated reasons for those strikes are pretextual." *Ante* at 14. It is well-established that the presence of other African American jurors does not prevent a party from establishing "a prima facie case of discrimination under *Batson*." *Harris v. Kuhlmann*, 346 F.3d 330, 346 (2d Cir. 2003).[4] But the magistrate judge did not deny that Salters's

---

[3] The majority adds that "the Supreme Court's decision in *Pitchford v. Cain* supports our conclusion." *Ante* at 18 (citation omitted). It does not. In *Pitchford*, the Supreme Court said only that the trial judge—after hearing the prosecutor's asserted race-neutral reasons for a strike and the defense counsel's argument that the reasons were pretextual—must "determine whether those asserted reasons were the actual reasons or instead were pretextual." 146 S. Ct. at 1353. The Supreme Court did not say—and it has never said—that anything more than "a clear rejection or acceptance of a *Batson* challenge" is required. *Messiah*, 435 F.3d at 198.

[4] *See Harris*, 346 F.3d at 346 ("[A] prosecutor may not avoid the *Batson* obligation to provide race-neutral explanations for what appears to be a

12

attorney had made a prima facie case. Nor did she excuse the defense counsel from the obligation to provide race-neutral explanations. Instead, the magistrate judge required the defense to provide race-neutral explanations and heard the arguments from Salters's attorney that the explanations were pretextual. She never said that "inclusion of two Black jurors on the jury is a valid reason to excuse the peremptory strikes if defense counsel's stated reasons for those strikes are pretextual." *Ante* at 14. She followed the three-step *Batson* process and concluded that the stated reasons for the strikes were *not* pretextual.

In context, the statement of the magistrate judge that "there are two black members who will still be on the jury," App'x 68, responded directly to the contentions of Salters's attorney that "we had a jury pool of a jury that would more fairly represent the parties in this case," that the peremptory challenges resulted in "a jury that's mostly not black," and that "[t]his is a complete jury that violates the *Batson* rule," *id.* at 67. Salters's attorney understood the magistrate judge's statement to respond to his argument about the overall composition of the jury. He replied by stating that he "would, again, say that our jury is overwhelmingly not black." *Id.* at 68. It was not erroneous for the magistrate judge to respond to the attorney's argument about the fairness of the overall jury composition.[5]

---

statistically significant pattern of racial peremptory challenges simply by forgoing the opportunity to use *all* of his challenges against minorities.") (quoting *United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir. 1991)); *id.* ("We reject the Government's contention that the mere presence of two blacks on a jury automatically negates a *Batson* violation.") (alteration omitted) (quoting *United States v. Johnson*, 873 F.2d 1137, 1139 (8th Cir. 1989)).

[5] In any event, we and other circuits have said that a trial court may consider the composition of the jury when deciding whether the race-

\* \* \*

"America's trial judges operate at the front lines of American justice" and have "the primary responsibility to enforce *Batson* and prevent racial discrimination from seeping into the jury selection process." *Flowers v. Mississippi*, 588 U.S. 284, 302 (2019). Here, the magistrate judge overseeing jury selection discharged that responsibility. She allowed Salters's attorney to raise a *Batson* challenge to the three peremptory strikes, she listened to the defense's race-neutral reasons, and she permitted Salters's attorney to argue that those purportedly neutral reasons were pretextual. After hearing the arguments of the parties, she clearly rejected the challenge, emphasizing that both sides had "made their record" and that the arguments had "[o]bviously" been "preserved." App'x 68.

The magistrate judge made no error. "As long as a trial judge affords the parties a reasonable opportunity to make their respective

neutral reasons are pretextual. *See, e.g.*, *Harris*, 346 F.3d at 346 ("[U]nder *Batson*, the fact that the prosecutor initially accepted one black juror is a circumstance that might tend to rebut an inference that the prosecutor used his peremptory strikes in a discriminatory manner."); *United States v. Jordan*, 893 F.2d 182, 184 n.3 (8th Cir. 1990) ("The fact that blacks do serve on a jury will not alone belie a *Batson* claim, but their service can be taken into account to determine whether or not the government is striking blacks for racial reasons."), *cert. granted, judgment vacated on other grounds*, 496 U.S. 902 (1990); *United States v. Williamson*, 53 F.3d 1500, 1510 (10th Cir. 1995) ("[A]lthough the mere presence of members of a certain race on the final jury does not automatically negate a *Batson* violation, it can be a relevant factor, particularly when the prosecution had the opportunity to strike them.") (alteration omitted) (quoting *United States v. Esparsen*, 930 F.2d 1461, 1468 (10th Cir. 1991)); *United States v. Puentes*, 50 F.3d 1567, 1578 (11th Cir. 1995) ("Although the presence of African-American jurors does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the paucity of the claim.").

14

records, [s]he may express [her] *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Messiah*, 435 F.3d at 198. When the magistrate judge said that she was "going to overrule the *Batson* challenge," App'x 68, that was a clear rejection.

The Supreme Court explained in *Batson* that "the trial judge's findings in the context" of a *Batson* challenge "largely will turn on evaluation of credibility," so "a reviewing court ordinarily should give those findings great deference." 476 U.S. at 98 n.21. In an appeal such as this one, "a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). That is a "highly deferential standard of review." *Id.* at 479. Because the magistrate judge made no procedural error, I would affirm the judgment under this substantive standard. The majority instead remands the case for the trial court to repeat the credibility findings it has already made. I dissent.